UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Clark | Civil Action No. 6:19-01202 |
| Versus | Judge Robert R Summerhays |
| Sampson Estate et al | Magistrate Judge Carol B Whitehurst |

### REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is a Motion To Dismiss Pursuant To Rule 12(b)(2) filed by defendants, David L. Norman ("Norman"), Mackem Aviation, LLC ("Mackem Aviation") d/b/a Space City Aviators ("Space City"), and American National Property and Casualty Company ("American National") (collectively "Defendants") [Rec. Doc. 4], Plaintiff, James Kenneth Clark's, Opposition [Rec. Doc. 29] and Defendants' Reply [Rec. Doc. 30]. For the reasons that follow, the Court will recommend that Defendants' Motion To Dismiss be denied.

### I.  BACKGROUND

This litigation arises out of an aircraft accident that occurred on August 31, 2018. On that date, Marcus Todd Sampson ("Sampson") was piloting a Piper PA28R airplane, FAA Registration No. N7430J (the "Accident Aircraft") when the aircraft impacted and destroyed a communications tower located on property owned by

Plaintiff, James Kenneth Clark, in Vermilion Parish, Louisiana. *R. ¶ 2*. Sampson was fatally injured as a result of the accident. Plaintiff filed the instant action against Defendants—Norman and Mackem Aviation, the owner/operator of the aircraft, American, the aircraft's insurer, as well as Sampson's estate seeking damages sustained as a result of the accident. *Id. at ¶¶ 3-6, 12*. Plaintiff alleges his damages include *inter alia*, property damage and the loss of a lucrative long term lease on the tower. *Id. at ¶¶ 5-6, 10-11*.

Defendants filed the instant motion requesting that the Court dismiss Plaintiff's Complaint against them for lack of personal jurisdiction, pursuant to Rule 12(b)(2). *R*, 4. On September 27, 2019, the Court granted Plaintiff's motion for Jurisdictional Discovery and to continue the deadlines on the instant motion. *R. 11*. Plaintiff filed its opposition to Defendant's motion on August 19, 2020. *R. 29*.

## II. CONTENTIONS OF THE PARTIES

Defendants move the Court to dismiss the Complaint against them for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). They represent that Norman and his wife are residents of Texas and the sole members of Mackem Aviation, a Texas LLC. They further represent that Space City is a Mackem Aviation flying club whose qualified pilot members pay a membership fee and are permitted to contract/lease Space City aircraft. Defendants assert that neither they, nor any Space City member, was aware that Sampson intended to operate the Accident

2

Aircraft in Louisiana or over Louisiana airspace. They further assert that American National is a Missouri corporation and that the policy of liability insurance was issued to Mackem Aviation and delivered in Texas. As such, Defendants assert that Plaintiff cannot establish a *prima facie* case to confer either general or specific personal jurisdiction in order to give this Court jurisdiction over them.

Plaintiff argues that the deposition and documents produced by Norman and Mackem Aviation provide that they and their insurer, American National, are subject to the personal jurisdiction of this Court. *R. 29-2*. In particular, Norman's testimony, as owner of Mackem Aviation in its corporate deposition, and the documents produced confirm that the expected use of the Accident Aircraft by the Space City members, such as Sampson, was for pleasure/travel anywhere in the country—certainly into Louisiana. American National's insurance policy provides it intended to provide coverage for Mackem Aviation and its members for any accidents occurring anywhere in the United States, Mexico, and the Bahamas.

### III. LAW AND ANALYSIS

#### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Whether personal jurisdiction can be exercised over a nonresident defendant is a question of law. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990). "Personal jurisdiction is an

essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n. 2 (5th Cir. 1999). When, as in this case, a nonresident defendant challenges personal jurisdiction, the party invoking the power of the court bears the burden of proving that jurisdiction exists. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) When the defendant's motion is decided without an evidentiary hearing, the opposing party is required to present facts sufficient to constitute a prima facie case of personal jurisdiction to satisfy the burden. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). A prima facie showing of personal jurisdiction may be established by the pleadings, depositions, affidavits, or exhibits of record. *Guidry*, 188 F.3d at 625. The court must accept as true the nonmoving party's uncontroverted allegations and resolve any factual conflicts in its favor. *Central Freight Lines Inc.*, 322 F.3d at 380. But the court is not required to credit conclusory allegations, even if left uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). If the court holds an evidentiary hearing, however, the plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014). In this case, no evidentiary hearing was held.

In determining whether personal jurisdiction is proper, a district court sitting in diversity, as in this case, applies the law of the forum state. *Companion Property and Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013). Under the Louisiana Long-Arm Statute, a court may exercise personal jurisdiction over any nonresident so long as the basis for such jurisdiction is consistent with the United States Constitution. La. R.S. 13:3201(B). Consequently, the limits of the Louisiana Long-Arm Statue are coextensive with the limits of constitutional due process. *Alonso v. Line*, 846 So.2d 745, 750 (La. 2003). Therefore, this Court need only determine whether subjecting the defendant to suit in Louisiana would be consistent with the Due Process Clause of the Fourteenth Amendment. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999). The exercise of personal jurisdiction over a nonresident defendant satisfies due process when: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with that state, and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 813 (5th Cir. 2006). In other words, due process is satisfied when the defendant's connection with Louisiana is such that the defendant should reasonably anticipate being haled into court in Louisiana. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

There are two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. While Defendants contend that their contacts with Louisiana give rise to neither, Plaintiff argues "there is more than ample grounds for personal jurisdiction in this case, both under general and specific personal jurisdiction principals."

### 1. General Personal Jurisdiction

General jurisdiction exists when the defendant's contacts with the forum state are not only "substantial" but also "continuous and systematic"; furthermore, such contacts need not relate to the pending litigation. *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). Corporations are considered at home in the states in which they were incorporated and have their principal places of business. *Id.* Limited liability companies are also subject to the "at home" test. *See, e.g., Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 227-38 (5th Cir. 2020).

Defendants attach the September 6, 2019 Affidavit of Norman, *R. 4-2*, and the September 12, 2019 Affidavit of David Jones, the owner of HighPoint Aircraft Services, Inc. d/b/a HighPoint Claims Service, the claims administrator for Acceleration Aviation Underwriters, Inc., which acts as the aviation managers for American National. *R. 4-3*. Defendants represent that the Accident Aircraft was owned by Norman, a Texas resident and President of Mackem Aviation. *R. 4-2, Affidavit of David Norman, ¶¶ 2, 4*. Mackem Aviation is an LLC, organized under

6

the laws of Texas with its principal place of business in Webster, Texas. *Id. at ¶ 5.* Norman and his wife, Bonny Norman, also a Texas resident, are the only members of the LLC. *Id. at ¶ 4.* Neither Norman nor Mackem Aviation: (1) has contacts with Louisiana; (2) has had a bank account in Louisiana; (3) own, use or possess any real or personal property in Louisiana now or at any time in the past; (4) maintain or have maintained a place of business, mailing address, or telephone number in the State of Louisiana; nor, (5) have conducted business in the State of Louisiana. *R. 4-2. at ¶ 3, R. 4-3 at ¶9.* They also represent that American National is a Missouri corporation. *R. 4-3, Affidavit of David Jones.* Thus, as Defendants' assert, these facts lead to the conclusion that Defendants are not so "at home" in Louisiana in order to support a finding of general jurisdiction.

## 2. **Specific Personal Jurisdiction**

Specific personal jurisdiction exists when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arose out of or related to those activities. *Panda Brandywine Corp.*, 253 F.3d at 868. Thus, specific personal jurisdiction requires a claim-specific inquiry. *Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d 485, 489 (5th Cir. 2018). Specific personal jurisdiction cannot rest on "random, fortuitous, or tentative" connections. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 475 (1985). The suit must arise out of or relate to the defendant's contacts with the forum.

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id*. at 1773.

The inquiry used to determine whether specific jurisdiction exists has three steps. First, the court must determine whether the defendant has sufficient minimum contacts with the forum state or, in other words, whether the defendant has purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there. *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court'" in the forum state. *McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir. 2009), citing *Luv N' care, Ltd*., 438 F.3d at 470. Random, fortuitous, or attenuated contacts are insufficient, *Carmona v. Leo Ship Management, Incorporated*, 924 F.3d 190, 194 (5th Cir. 2019), but a single, substantial act directed toward the forum can support specific jurisdiction. *ASARCO, Inc. v. Glenara, Ltd*., 912 F.2d 784, 786 (5th Cir. 1990).

Second, the court must determine whether the plaintiff's cause of action arose out of or resulted from the defendant's contacts with the forum. *Seiferth*, 472 F.3d at 271. At this step, the proper focus is on the "relationship among the defendant, the forum, and the litigation." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008). This is a claim-specific inquiry, as "the Due Process Clause prohibits the exercise of [specific personal] jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Seiferth* at 275.

Finally, if the nonmoving party satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that the forum state's exercise of jurisdiction would be unfair or unreasonable. *Seiferth* at 271. In this inquiry, a court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd.*, 438 F.3d at 473. "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008)

Defendants assert that they have no meaningful contacts with the state of Louisiana. They represent that the Accident Aircraft was owned by Norman, the President of Mackem Aviation, and leased to Mackem Aviation d/b/a Space City. *R.*

9

*4-2, Affidavit of David Norman, ¶¶ 2, 4*. Space City is a flying club which started operating around April 1, 2018. The flying club's members pay a monthly membership fee. *Id.* Members who are qualified pilots are permitted to use Space City aircraft in exchange for payment of the club's rental fees and costs. *Id. at ¶¶ 7. 8. 10.* Such members must sign an Aircraft "Use Agreement" which sets forth certain terms and conditions prior to using the flying club's aircraft. *Id. at ¶ 10*. The Use Agreement does not define a geographical area in which the aircraft may be operated and the members are not required to identify the geographical area where an aircraft will be flown. *R. 4-2 at ¶ 17*. Prior to the accident at issue, Sampson was a member of the flying club. *R. 4-2 at ¶ 11*. Defendants assert that neither they, nor any Space City member, was aware that Sampson intended to operate the Accident Aircraft in Louisiana or over Louisiana airspace. *Id. at ¶¶ 18, 19*. Defendants further assert that American National is a Missouri corporation and that policy of liability insurance was issued to Mackem Aviation and delivered in Texas. *R. 4-3, Affidavit of David Jones, ¶¶ 2-5*. Defendants maintain that Plaintiff cannot demonstrate that they *purposefully* directed any activities to Louisiana.

      Plaintiff cites the deposition of Norman as owner of Mackem Aviation in his argument that Defendants and their insurer, American National, are fully subject to the personal jurisdiction of this Court. Norman testified that the purpose of setting up the flying club was to rent his aircraft to members in order to "share expenses"

with him due to the expensive nature of aircraft ownership. *R.29-2, Norman/Mackem Aviation Depo., Exh. C., p. 23, 24*. In addition to their monthly membership fee, flying club members also paid a "rent" on the aircraft they used, which was calculated by engine flight hours recorded on a "Hobbs" meter. *Id. at 79-80*. Thus, if a member flew the plane for three hours, he would be charged a rent of a predetermined dollar amount per flight hour recorded on the aircraft's Hobbs meter. *Id.*

At the time of the accident, Mackem Aviation had two planes among its fleet, one used for training, and the other, the Accident Aircraft, used for "travel." *Id. at 46*. Norman conceded it was expected that flying club members might fly the subject aircraft in airspace outside of Texas (i.e. Louisiana) for pleasure/travel, stating, "East, west, north, south...." *Id.* He further stated that the inherent nature of a flying club was for its members to fly anywhere in the country—"Airplanes are inherently used for travel. That's why we have airplanes, so." *Id. at 74*. He agreed that any of the flying club's 30 members at the time could be expected to fly over the State of Louisiana simply because Mackem Aviation was a flying club. *Id. at 75*. Norman himself admitted flying through Louisiana on two occasions. *Id. at 19*.

Members of the flying club had access to a debit card which stayed with the aircraft and could be used to purchase fuel at any pit-stop the pilot made while traveling. *Id. at 41-42*. The pilot would purchase fuel wherever he was, using

11

Mackem Aviation's debit card, and the fuel consumed was included in the rental. *Id. at 43*. In the deposition, Norman stated that Sampson's use of the Accident Aircraft was for six days and involved a trip to Florida. The Court's review of the debit card statements reflects that before the accident, Mackem Aviation's aircraft were fueled up in Arkansas, Missouri, Florida, Mississippi, and Louisiana. *R. 29-1, Exh. D, fuel debit card statements —June and August, 2018, p. 22, 26*. After the accident, Mackem Aviation's records reflect that its aircraft were fueled up in Florida and Alabama. *Id*. Thus the fuel debit card records indicate that in the five months of its existence, Mackem Aviation's flying club members regularly traveled outside of Texas to six different states, including Louisiana. *Id. at p. 30.*

In their reply, Defendants argue that "any action taken by Norman in his status as a member of Mackem cannot be used to support personal jurisdiction over Norman in his individual capacity." *R. 30, p. 4*. Here, Norman is the owner of the Accident Aircraft which was leased by Sampson through Mackem Aviation. Norman purposefully intended his aircraft to be used by the members of his flying club in order to circumvent its cost and expenses. In doing so, he purposefully allowed the members to fly the aircraft without jurisdictional restraint and secured liability insurance to that effect. The debit card records, which Norman confirmed he reviewed, reflect use in Louisiana and several other states outside of Texas prior to the instant accident. The Court finds the foregoing contrary to Defendants'

argument that "neither Mackem nor Norman had knowledge of where any member intended to fly the aircraft."

As to American National, the deposition of Mackem Aviation provides that it purchased the American National insurance policy to provide coverage for its members for any accidents occurring anywhere in the United States, Mexico, and the Bahamas. *Id. at 52-53*. When asked, if given the opportunity, would Mackem Aviation have purchased an insurance policy that would only cover its members while flying in Texas, Norman testified, "It would be ridiculous." *Id. at 75*. Mackem Aviation also testified that it confirmed insurance coverage compliance with each of its members, and that Sampson met the requirements for coverage under the American National policy at issue in this case. *Id. at 53-54*.

The Court finds that this lawsuit arose out of or resulted from Defendants' contacts with Louisiana. The first two prongs of the analysis being satisfied, a presumption arises that Louisiana's exercise of jurisdiction over Defendants would be fair and reasonable, and the burden shifts to Defendants to defeat specific personal jurisdiction by showing that Louisiana's exercise of jurisdiction would be unfair or unreasonable. The factors to be analyzed are (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of

justice, and (5) the shared interest of the several states in furthering fundamental social policies.

Defendants make no reference to these factors in their briefing, primarily relying on their contention that they had insufficient contacts with Louisiana to satisfy the first two prongs of the analysis. Upon examination of these factors, however, this Court concludes that litigation of this claim in Louisiana would not constitute an undue burden on Defendants.

## IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' Motion To Dismiss Pursuant To Rule 12(b)(2) [Rec. Doc. 4] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** this 15th day of September, 2020.

*[signature]*

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE