UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JAMES KENNETH CLARK

VERSUS

MARCUS TODD SAMPSON ESTATE ET AL

CASE NO.  6:19-CV-01202

JUDGE ROBERT R. SUMMERHAYS

MAGISTRATE JUDGE WHITEHURST

### MEMORANDUM RULING

The present matter before the Court is the Motion to Dismiss for Lack of Jurisdiction [ECF No. 4] (the "Motion to Dismiss") filed by defendants David L. Norman ("Norman"), Mackem Aviation ("Mackem"), and American National Property and Casualty Company ("American National"). These defendants move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure. The Motion to Dismiss was referred to the Magistrate Judge and, on September 15, 2020, Magistrate Judge Whitehurst issued a Report and Recommendation ("R&R") recommending that the Motion to Dismiss be denied. The parties have now responded to the Report and Recommendation.

## I.
### FACTUAL BACKGROUND

The current litigation arises out of an aircraft accident that occurred on August 31, 2018. On that date, Marcus Todd Sampson ("Sampson") was piloting a Piper PA28R airplane (the "Aircraft") when the aircraft impacted a communications tower located on property owned by

1

Plaintiff near Kaplan, Louisiana.[1] The pilot, Sampson, was fatally injured as a result of the accident.

The Aircraft was owned by Defendant David Norman.[2] Norman, a Texas resident, is the President and a member of Defendant Mackem.[3] The only other member of Mackem is Norman's wife, Bonnie Norman, also a Texas resident.[4] Mackem is a Texas limited liability company that was formed on June 24, 2016; it maintains its principal place of business in Webster, Texas.[5] On March 19, 2018, Mackem formed a flying club: Space City Aviators.[6] Space City Aviators accepts members who pay a monthly membership fee.[7] Members of the flying club who are qualified pilots are permitted to use aircraft operated by the flying club in exchange for payment of the club's rental fee and payment of certain other consumption costs.[8] All of the members of the club who are qualified pilots are Texas residents.

Prior to the accident at issue in this case, Marcus Todd Sampson was a member of the flying club.[9] On April 1, 2018, Norman leased the Aircraft to Mackem, and this lease was in effect on the date of the accident, August 31, 2018.[10] On that date, Marcus Todd Sampson was using the Aircraft under the terms of his Space City Aviators membership and the flying club's Aircraft Use Agreement.[11] The Aircraft Use Agreement does not define a particular geographical area in which

---

[1] *See* Petition for Damages, ¶ 2
[2] Affidavit of David Norman, ¶ 14, Exhibit A to ECF No. 4.
[3] *Id.* at ¶¶ 2, 4.
[4] *Id.* at ¶¶ 4.
[5] *Id.* at ¶¶ 5, 6.
[6] *Id.* at ¶ 7.
[7] *Id.* at ¶ 8.
[8] *Id.* at ¶ 10.
[9] *Id.* at ¶ 11.
[10] *Id.* at ¶ 15
[11] *Id.* at ¶ 16.

the aircraft may be operated, and the flying club's members are not required to identify the geographical area where an aircraft will be flown prior to using the flying club's aircraft.[12]

Defendants Norman, Mackem, and American National (the "Moving Defendants") filed a Motion to Dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure arguing that the Court lacks personal jurisdiction over them. They contend that Norman and his wife are residents of Texas, and that they are the sole members of Mackem. Defendants assert that they were never aware that Sampson intended to operate the Aircraft in Louisiana or travel through Louisiana airspace. They further assert that American National is a Missouri corporation and that the policy of liability insurance was issued to Mackem and delivered in Texas. Accordingly, the Moving Defendants contend that Plaintiff cannot establish a prima facie case of general or specific personal jurisdiction. The parties requested and were granted leave to conduct jurisdictional discovery, which has now been completed.[13]

## II.
### RELEVANT LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. "Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication."[14] Whether personal jurisdiction can be exercised over a nonresident defendant is a question of law.[15] When a non-resident defendant challenges personal jurisdiction, the party invoking the power of the court bears the burden of proving that jurisdiction exists.[16]

---

[12] *Id.* at ¶ 17.
[13] ECF Doc. 11.
[14] *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n. 2 (5th Cir. 1999).
[15] *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).
[16] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

Where, as here, jurisdiction is grounded on diversity jurisdiction under 28 U.S.C § 1332, a federal court may exercise personal jurisdiction over a non-resident defendant if the forum state's long-arm statute confers personal jurisdiction over that non-resident defendant and if the exercise of personal jurisdiction satisfies the requirements of due process under the United States Constitution.[17]  The reach of the Louisiana Long-Arm Statute is co-extensive with the limits of due process under the Constitution.[18] As a result, the jurisdictional analysis under the Louisiana Long-Arm Statute collapses into a single inquiry of whether the exercise of personal jurisdiction comports with due process.[19] When a court decides a motion to dismiss for lack of personal jurisdiction without a hearing, the plaintiff need only demonstrate a prima facie basis for personal jurisdiction.[20] A plaintiff can demonstrate a prima facie basis for personal jurisdiction through the allegations contained in the complaint. However, if the defendant disputes the factual grounds for personal jurisdiction, the district court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[21] In judging whether a plaintiff has met his or her prima facie burden, a court must construe all uncontroverted allegations in the plaintiff's complaint as true.[22] If the defendant controverts factual allegations in the complaint with affidavits or other evidence, the plaintiff cannot rest solely on the controverted allegations in the complaint but must counter the defendant's evidence with affidavits or other evidence.[23] Disputes in the parties' evidence must be resolved in

---

[17] *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom et al*, 481 F.3d 309, 311 (5th Cir. 2007)).

[18] *Petroleum Helicopters, Inc. v. Avco Corp. et. al.*, 513 So. 2d 1188, 1192 (La. 1987).

[19] *Id.; see also In re Chinese-Manufactured Drywall Products Liability Litig.*, 753 F.3d 521, 546 (5th Cir. 2014).

[20] *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.)*, cert. denied,* 513 U.S. 930 (1994)*; Johnston v. Multidata Systems, Intern. Corp.,* 523 F.3d 602, 609 (5th Cir. 2008).

[21] *Quick Technologies, Inc. v. Sage Group PLC,* 313 F.3d 338, 344 (5th Cir. 2002).

[22] *Johnson,* 523 F.3d at 609.

[23] *Conoco Phillips Co. v. Jump Oil Co.,* 948 F. Supp. 2d 1272, 1276 (N.D. Okla. 2013).

the plaintiff's favor.[24] Personal jurisdiction can be based on either "general jurisdiction" or "specific jurisdiction."[25]

### III.
#### LAW AND ANALYSIS

**A. General Personal Jurisdiction.**

A court can exercise general jurisdiction only when a party's affiliations with the forum state are so "continuous and systematic" that the party is essentially "at home" in the forum.[26] For an individual defendant, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as *at home*."[27] A corporation is generally considered "at home" in its state of incorporation and the state where its principal place of business is located.[28] Under this standard, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" of the defendant.[29] In other words, it would be an "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation" subject to general jurisdiction "in that state."[30] Limited liability companies, like Mackem, are also subject to this "at home" test.[31]

The Magistrate Judge applied this standard in the present case and concluded that general jurisdiction does not exist over Norman and Mackem. The Court agrees. The record shows that neither Norman nor Mackem: (1) has had a bank account in Louisiana; (2) has ever owned, used

---

[24] *Johnson*, 523 F.3d at 609; *Kelly Law Firm, P.C. v. AN Attorney for You,* 679 F Supp. 2d 755, 762 (S.D. Tex. 2009).
[25] *Haliburton Energy Services, Inc. v. Ironshore Specialty Ins. Co.,* 921 F.3d 522, 539 (5th Cir. 2019).
[26] *Daimler A.G. v. Bauman*, 571 U.S. 117 (2014) (emphasis added).
[27] *Goodyear Dunlop Tires Operations, S.A. v. Brown ,* 564 U.S. 915, 924 (2011) (emphasis added).
[28] *Id.*
[29] *Id.*; *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citing *Daimler A.G.,* 134 S. Ct. at 761).
[30] *Daimler A.G.*, 571 U.S. at 139 n.19.
[31] *See, e.g., Frank v. PNK (Lake Charles) L.L.C.,* 947 F.3d 331, 227-38 (5th Cir. 2020).

or possessed any real or personal property in Louisiana; (4) have ever maintained a place of business, mailing address, or telephone number Louisiana; nor (5) have they conducted business in Louisiana.[32] Mackem is a Texas LLC and its principal place of business is in Texas.[33] Moreover, the record shows that Texas is Norman's domicile.[34] Because neither Norman nor Mackem are "at home" in Louisiana, the Court cannot exercise general jurisdiction over them.

The Magistrate Judge also concluded that general jurisdiction does not exist over American National. The Court agrees. American National is a Missouri corporation, its principal place of business is located in Missouri, and the insurance policy at issue was issued in Texas to Texas-based insureds.[35] Absent "exceptional circumstances," American National is not "at home" in Louisiana and thus not subject to general jurisdiction in Louisiana. The record does not reflect exceptional circumstances warranting the exercise of personal jurisdiction over American National.

Defendants point to evidence that American National is licensed to do business in Louisiana and was served under the Louisiana Long-Arm Statute in Louisiana.[36] Prior to *Daimler A.G.,* some courts held that registration to do business and the designation of an agent for service of process in the forum amounted to the continuous and systematic contacts that support general jurisdiction.[37] After *Daimler A.G.,* however, courts have generally held that registration and the appointment of an agent in the forum state does not render a defendant "at home" in the forum, and that mere registration does not permit a finding that the defendant has "consented" to general

---

[32] ECF Document 4-2. at ¶ 3, ECF Document 4-3 at ¶9.
[33] Affidavit of David Norman, ¶5, 6.
[34] *Id.,* ¶ 4
[35] ECF Document 4-3.
[36] Exhibit B to Document 8.
[37] *Lightell v. Morris,* 1993 U.S. Dist. LEXIS 16043, at *6 (E.D. La. Nov. 4, 1993) (citing the Louisiana Supreme Court's decision in *Fox v. Board of Supervisors of L.S.U.,* 576 So. 2d 978 (La. 1991)).

jurisdiction.[38] In *Gulf Coast Bank*, the court held that a company's appointment of an agent for service of process and registration to do business in Louisiana does not confer general jurisdiction in Louisiana under *Daimler A.G.*:

> [T]reating business registration as consent to general jurisdiction would have the effect of subjecting a foreign corporation to general jurisdiction in every jurisdiction in which it did business. Such a conclusion is untenable in light of *Daimler*. As noted recently by the Second Circuit: "[i]f mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and Daimler's ruling would be robbed of meaning by a back-door thief." This Court will not be an accomplice to such a back-door thief.[39]

Accordingly, the record does not support the exercise of general jurisdiction over American National.

### B. Specific Personal Jurisdiction.

Specific personal jurisdiction exists when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arose out of or are related to those activities.[40] Specific personal jurisdiction thus requires a claim-specific inquiry.[41] Specific personal jurisdiction cannot rest on "random, fortuitous, or tentative" connections.[42] The suit must arise out of or relate to the defendant's contacts with the forum.[43] "In other words, there must be 'an affiliation between the forum and the underlying controversy,

---

[38] *Gulf Coast Bank v. Designed Conveyor Sys., LLC*, No. CV 16-412-JJB-RLB, 2017 WL 120645, at *7 (M.D. La. Jan. 12, 2017); *see also In re Asbestos Prod. Liab. Litig. (No. VI)*, 384 F. Supp. 3d 532, 543–45 (E.D. Pa. 2019)(Pennsylvania statutory scheme requiring foreign corporations to register to do business and, therefore, to consent to general personal jurisdiction in Pennsylvania, offends the Due Process Clause and is unconstitutional).
[39] *Gulf Coast Bank v. Designed Conveyor Sys., LLC*, 2017 WL 120645, at *7 (footnotes and citations omitted).
[40] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).
[41] *Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d 485, 489 (5th Cir. 2018).
[42] *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 475 (1985).
[43] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017).

principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[44]

The Court must employ a three-step inquiry to determine whether specific jurisdiction exists. First, the court must determine whether the defendant has sufficient minimum contacts with the forum state or, in other words, whether the defendant has purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there.[45] "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court'" in the forum state.[46] While random, fortuitous, or attenuated contacts are insufficient,[47] a single, substantial act directed toward the forum can support specific jurisdiction.[48]

Second, the Court must determine whether the Plaintiff's cause of action arose out of or resulted from the Defendants' contacts with the forum.[49] The proper focus in this step is on the "relationship among the defendant, the forum, and the litigation."[50] This is a claim-specific inquiry, as "the Due Process Clause prohibits the exercise of [specific personal] jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts."[51]

Finally, if the nonmoving party satisfies the first two steps, the burden then shifts to the defendant to defeat jurisdiction by showing that the forum state's exercise of jurisdiction would be unfair or unreasonable.[52] To make this determination, the Court must analyze five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest

[44] *Id.* at 1773.
[45] *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir. 2006).
[46] *McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir. 2009), citing *Luv N' care, Ltd.,* 438 F.3d at 470.
[47] *Carmona v. Leo Ship Management, Incorporated,* 924 F.3d 190, 194 (5th Cir. 2019),
[48] *ASARCO, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 786 (5th Cir. 1990).
[49] *Seiferth,* 472 F.3d at 271.
[50] *Stroman Realty, Inc. v. Wercinski,* 513 F.3d 476, 487 (5th Cir. 2008).
[51] *Seiferth* at 275.
[52] *Id.* at 271.

in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[53] "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown."[54]

Plaintiff contends that the claims in the present action resulted from the Moving Defendants' contacts with Louisiana. Specifically, Plaintiff points to evidence that debit card statements sent to Mackem and reviewed by Norman established that "in the five months of its existence, Mackem's flying club members regularly traveled outside of Texas to six different states, including Louisiana," and that Norman testified in his deposition that he personally had flown through Louisiana on two occasions. Based on this evidence, Plaintiff contends that it was foreseeable that the aircraft involved in the collision could fly through Louisiana airspace and thus could be involved in an accident in Louisiana. The Magistrate Judge agreed and concluded that the Court may exercise specific jurisdiction over Norman, Mackem, and American National.

In personal jurisdiction cases involving aircraft traveling across state lines, Fifth Circuit jurisprudence appears to focus on whether the defendant had reason to know that the aircraft involved in an accident was traveling to the specific state where the accident occurred. For example, the Circuit's decision in *Seiferth v. Helicopteros Atuneros, Inc.* addressed whether there was specific jurisdiction over a California company (HAI) that owned a helicopter involved in an accident in Mississippi.[55] HAI leased the helicopter to another company, AIR 2, which then flew the leased helicopter to Mississippi to perform work on a platform.[56] While in Mississippi, the

---

[53] *Luv N' care, Ltd.*, 438 F.3d at 473.
[54] *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008).
[55] *Seiferth*, 472 F.3d at 271.
[56] *Id.*

helicopter was involved in an accident, resulting in the death of the plaintiff in that case.[57] The Fifth Circuit rejected the exercise of personal jurisdiction over the helicopter's California-based owner in Mississippi even though it was foreseeable that the leased helicopter could be flown across state lines.[58] The court concluded that the California owner did not purposefully direct its activities toward Mississippi and that the helicopter was flown to Mississippi as a result of the unilateral action of a third party, AIR 2.[59] The court concluded that the record "does not show any reason for HAI to have expected Air 2 to use the helicopter in Mississippi."[60] In reaching its conclusion, the court distinguished two cases relied on by the plaintiff in that case: *Elkhart Eng'g Corp. v. Dornier Werke*[61] and *Brown v. Astron Enters., Inc.*[62] Both cases involved leased aircraft and the courts found grounds to exercise personal jurisdiction. The court in *Seiferth*, however, noted that the aircraft owners in *Elkhart Eng'g Corp.* and *Brown* "had reason to expect" that the aircraft would be flown to the forum state.[63] Specifically, in *Elkhart Eng'g Corp.*, the aircraft owner knew that the aircraft was to be transported to the forum state for a sales demonstration. In *Brown*, the pilot of the aircraft filed a flight plan showing his intent to travel to forum state. According to the *Seiferth* court:

> Dornier in *Elkhart*, and the student pilot in *Brown*, declared their intentions to use the aircraft in the forum. Air 2 did not, and HAI had no reason to expect that its helicopter would be used in Mississippi. Thus, contrary to Seiferth's assertion, these cases do not support the exercise of personal jurisdiction over HAI.[64]

The *Seiferth* court also questioned the whether the "stream of commerce" doctrine of personal jurisdiction applies to leased aircraft, but ultimately concluded that, even if the doctrine applied, it

---

[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.* at 274
[61] 343 F.2d 861 (5th Cir. 1965).
[62] 989 F. Supp. 1399 (N.D. Ala. 1997).
[63] *Seiferth*, 472 F.3d at 271.
[64] *Id.* at 273.

would not support personal jurisdiction because the defendant had no reason to expect that its helicopter would be used in Mississippi.[65]

Here, like *Seiferth*, the record does not support specific jurisdiction over Norman and Mackem. Norman owned the aircraft at issue and leased it to Mackem to use for a flying club. The flying club did not require its members to file a flight plan or otherwise identify where they intended to take the club's aircraft; indeed, the process for reserving the club's aircraft involved no personal contact between Norman or Mackem and the pilot borrowing the aircraft. Specifically, Members of the flying club apparently reserved one of the two aircrafts operated by Mackem through an internet-based app called "Flight Circle."[66] The Aircraft Use Agreement signed by the flying club's members also does not define the geographical area where the club's aircraft can be flown by members. Like the pilot in *Seiferth*, Sampson did not file a flight plan, nor did he advise Mackem where he intended to take the Aircraft. At no time did Mackem or Norman maintain flight logs showing where the aircraft travelled.[67] In sum, neither Mackem nor Norman purposefully directed their activities toward Louisiana, nor did they have reason to expect that the Aircraft would be flown to Louisiana. Rather, like *Seiferth*, the Aircraft travelled to Louisiana as a result of the unilateral actions of the pilot who borrowed it, Sampson.

Nor does the evidence regarding prior interstate travel and prior travel through Louisiana support specific jurisdiction. Norman specifically testified that he had never personally flown over Louisiana after Mackem was formed five months prior to the collision.[68] Indeed, the record reflects only that Norman had personally flown over Louisiana *twice in ten years*. This evidence is too

---

[65] *Id.* at 273-74.
[66] Deposition of David Norman, Exhibit A to ECF Document 30.
[67] *Id.*
[68] *Id.* at p. 69.

remote and attenuated to show that Norman and Mackem had reason to expect that Sampson would fly the Aircraft across Louisiana airspace when Sampson borrowed the plane on August 31, 2018.

The debit card records relied on by Plaintiff similarly do not support specific jurisdiction. Mackem's flight club members had use of a debit card owned by Mackem to purchase fuel when they rented the club's aircraft. Norman testified that he reviewed the debit card statements every 30-60 days but he never recalled seeing any purchases for fuel in Louisiana, Mississippi, Alabama, Florida or Georgia prior to the August 2018 accident.[69] As far as the specific bank statements cited by Plaintiff, these statements do not show that Norman and Mackem had reason to expect that Sampson would fly the Aircraft through Louisiana. The record includes debit card statements for the months of June, August and September 2018. Defendants point to an entry on page 22 of the June 2018 bank statement, which they allege shows that the plane was re-fueled in Louisiana months before the August 2018 collision. [ECF No. 29-1, Exh. D, Fuel Debit Card Statements — June and August, 2018 at pp. 22, 26] Contrary to the arguments made to the Magistrate Judge, page 22 of this exhibit makes no reference to any activity in Louisiana.[70] With respect to the August 2018 statement, neither Norman nor Mackem would have received that statement prior to the August 31st collision, and thus would not have been aware of any transactions in Louisiana prior to the collision. In sum, Plaintiff has not established specific personal jurisdiction over Norman or Mackem.

Plaintiff also has not established specific jurisdiction over American National in this case. The American National policy covering the Aircraft was issued in Texas, the covered aircraft was

---

[69] *Id.* at pp. 67-68.
[70] The Court notes that Plaintiff may have inadvertently read a reference to "**LA Porte, TX**" on page 22 of the exhibit as a reference to Louisiana ("LA").

based in Texas, and the insureds included Texas residents and a Texas limited liability company.[71]

Plaintiff points to the fact that the policy provides coverage for accidents in Louisiana. The policy,

however, provides *nationwide coverage*, not just coverage for Louisiana.[72] Courts have generally

concluded that similar "nationwide coverage" provisions do not impose personal jurisdiction over

an insurer in all fifty states if an accident occurs outside the state where a policy has been issued.[73]

Other courts have relied on the "stream of commerce" strand of personal jurisdiction case law to

suggest that, if an insurance policy covers movable property that is transported through one or

more states in the stream of commerce, the insurer may be subject to personal jurisdiction in any

state through which the covered property travels.[74] Other courts have rejected this reasoning

outside of the maritime insurance context in light of *Choice Healthcare, Inc. v. Kaiser Foundation*

*Health Plan of Colorado*.[75] *Choice Healthcare, Inc.* held that the stream of commerce theory could

not be used to establish personal jurisdiction over a foreign health maintenance organization or

health and disability insurer to establish personal jurisdiction in Louisiana. In short, as in *Lillie v.*

*Stanford Tr. Co* and *Choice Healthcare, Inc.*, American National was not placing a product or

---

[71] Affidavit of David Norman.

[72] Exhibit C to Document 29, Deposition of David Norman, p. 52-53.

[73] *See, e.g., Baird v. Shagdarsuren*, 426 F. Supp. 3d 284 (N.D. Tex. 2019) (holding that automobile insurer's nationwide coverage provision did not create sufficient minimum contacts with Texas); *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 577–78 (9th Cir. 2011) ("We note that the Kings' insurance policies provide coverage for any accident that occurs anywhere in the United States. This scope of coverage does not, however, mean that the Kings may hale the Companies into any court in this nation.")

[74] *See, e.g., Adams v. Unione Mediterranea Di Sicurta*, 234 F. Supp. 2d 614, 622-23 (E.D. La. 2002). In *Adams*, the defendant-insurance company was based in Italy. *Id.* at 617. It insured a shipment of steel cargo that arrived in Louisiana, and subsequently sank and was damaged in Louisiana. *Id.* at 616. Finding that the defendant knew cargo that it insured was bound for and would pass through Louisiana, the Court concluded the defendant could be sued in Louisiana under the stream of commerce theory. *Id.* at 622–23.

[75] 615 F.3d 364 (5th Cir. 2010); *Lillie v. Stanford Tr. Co.*, No. 3:13-CV-3127-N, 2015 WL 13741930, at *4 (N.D. Tex. Apr. 7, 2015) (*Choice Healthcare, Inc.* "forecloses application of *Adams's* reasoning" applying the stream of commerce doctrine to insurance policies covering goods that flow in the stream of commerce).

service in the stream of commerce merely by issuing an insurance policy in Texas to Texas-based insureds.[76] Accordingly, Plaintiff has not established specific jurisdiction over American National.

## IV.
## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED as to American National, Norman, and Mackem. The claims against these defendants are DISMISSED without prejudice.

THUS DONE in Chambers on this 30th day of November, 2020.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[76] 615 F.3d 364; 2015 WL 13741930, at *4.

14